**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SIERRA M. H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 5:25-CV-762 (PJE)

---

**APPEARANCES:**

**OF COUNSEL:**

Amdursky, Pelky Law Firm
26 East Oneida Street
Oswego, New York 13126
Attorneys for plaintiff

AMY CHADWICK, ESQ.

Social Security Administration
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

VERNON NORWOOD, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER[1]

Sierra M. H.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying her application for social security income ("SSI"). *See* Dkt. No. 1. Plaintiff moved for the Commissioner's decision to be vacated and remanded for

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. L.R. 72.2(b), N.D.N.Y. L.R. 72.3(b), and General Order 18. *See* Dkt. No. 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

further proceedings. *See* Dkt. No. 9. The Commissioner moved for affirmance. *See* Dkt. No.12.[3] For the following reasons, plaintiff's cross-motion is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is vacated and remanded for further proceedings.

## I. **Background**

On February 19, 2020, plaintiff filed a Title XVI application for SSI benefits, alleging disability onset date of June 21, 2000. *See* T. at 236-41, 308.[4] On December 9, 2020, the Social Security Administration ("SSA") denied plaintiff's claim. *See id.* at 91-96. Plaintiff sought reconsideration, which the SSA denied on March 29, 2021. *See id.* at 102-16. Plaintiff appealed and requested a hearing. *See id*. at 117-19, 670. On July 8, 2022, plaintiff requested to amend her alleged disability onset date to February 19, 2020. *See id*. at 308. On July 22, 2022, a hearing was held before Administrative Law Judge ("ALJ") Jeremy Eldred. *See id.* at 31-51. On August 17, 2022, the ALJ issued an unfavorable decision. *See id.* at 14-30. On April 11, 2023, the Appeals Council affirmed the ALJ's determination, and the decision became final. *See id*. at 1-6. On May 24, 2023, plaintiff commenced an action in this Court seeking to vacate the July 22, 2022, ALJ hearing decision and requesting that she be awarded SSI benefits, or in the alternative, that the matter be remanded for a new hearing. *See id*. at 605-14. On October 30, 2023, the Court granted the parties' stipulation and order for remand, vacated the July 22, 2022,

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

ALJ hearing decision, and remanded the matter for further development. *See id*. at 615-17.

On March 1, 2024, the Appeals Council remanded the matter to the ALJ. *See* T. at 620-25. On October 28, 2024, a hearing was held before the ALJ. *See id*. at 569-82. On March 15, 2025, another hearing was held before the ALJ because significant portions the October 28, 2024, hearing audio recording were "inaudible." *Id*. at 583-604. On April 14, 2025, the ALJ issued an unfavorable decision. *See id*. at 547-68. Plaintiff commenced this action on June 16, 2025. *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The

substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable

clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id.* (citing *DeChirico v.*

*Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff "has not engaged in substantial gainful activity since February 19, 2020, the application date." T. at 552. At step two, the ALJ found that plaintiff "has the following "severe" impairments: borderline intellectual functioning and anxiety disorder." *Id*. At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 553.

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels, except she can understand, remember, and carry out simple and routine instructions; can use judgment to make simple work-related decisions; can interact occasionally with supervisors or co-workers; is unable to do a job that requires interaction with the public; and can appropriately adapt to ordinary changes in a routine work setting.

T. at 555. At step four, the ALJ determined that plaintiff "has no past relevant work." *Id*. at 559. Before reaching step five, the ALJ concluded that the "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." *Id*. At step five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. Ultimately, the ALJ concluded that plaintiff "has not been

under a disability as defined in the Social Security Act since February 19, 2020, the date the application was filed." *Id*. at 560.

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for several reasons. *See* Dkt. No. 9 at 9-20. First, plaintiff argues that the ALJ erred at step two by misapplying Paragraph B of the Listings and concluding that she was only moderately limited in each of the four areas of mental functioning. *See id*. at 10-13. Second, plaintiff contends that the ALJ erred by concluding that her "alleged limitations were not consistent with the record," failing to consider significant portions of the record, and not discussing favorable evidence demonstrating her mental limitations. *Id*. at 13-15. Third, plaintiff asserts that the ALJ misapplied the supportability and consistency factors when he evaluated Dr. Weitzen and Dr. Lieber-Diaz's consultative medical opinions. *See id*. at 15-16. Fourth, plaintiff claims that the ALJ erred by concluding "that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence." *Id*. at 17 (citing T. at 557). Plaintiff states that the ALJ's reliance on her activities of daily living ("ADL") failed to account for any assistance plaintiff received from her mother or "explain how these activities reflect an ability to work." *Id*. at 17-18. Fifth, plaintiff maintains that the ALJ's RFC determination failed to account for her need for a job coach or additional assistance in the workplace. *See id*. at 18-19. Finally, plaintiff argues that the jobs the vocational expert listed are insufficient to support the ALJ's step five determination because she is only able to perform "simple and routine instructions" and the selected jobs require "the ability to carry

out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." *Id*. at 20 (first citing T. at 1001; then citing U.S. Dep't of Labor, Dictionary of Occupational Titles, App'x C (4th ed. 1991), 1991 WL 688702).

The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. *See* Dkt. No. 12 at 8-17. The Commissioner argues that the ALJ's Listings determination is correct because "although Plaintiff disagrees with the ALJ's evaluation of her mental limitations, she fails to show either at least two marked limitations or one extreme limitation of functioning in the paragraph B criteria." *Id*. at 9 (first citing Dkt. No. 9 at 9-12; then citing T. at 553-55). Next the Commissioner argues that the ALJ's RFC determination relied upon "the observations and opinion of Dr. Phillips, the findings of Drs. Weitzen and Liber-Diaz, and Plaintiff's daily activities." *Id*. at 10-16. The Commissioner also argues that the ALJ considered plaintiff's subjective complaints and reports. *See id* at 14-16. Further, the Commissioner argues that the vocational expert's testimony "demonstrates that Plaintiff can perform occupations that require a Reasoning Level of 2." *Id*. at 17.

B. **RFC Determination**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))). "[A]n RFC finding is administrative in nature, not

medical, and its determination is within the province of the ALJ." *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore

the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

C. **Medical Opinions**

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather medical opinions and PAMFs are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" prong, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No.

3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). With regard to the "consistency" prong, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id*. (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020

WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

1. **Dr. Weitzen and Dr. Lieber-Diaz**

In reaching plaintiff's RFC determination, the ALJ relied upon the opinions of state agency medical consultants Dr. Weitzen and Dr. Leiber-Diaz. *See* T. at 557-58. The ALJ explained:

> These opinions support my conclusion that [plaintiff] maintains the ability to perform simple routine work which requires limited social interaction. Dr. Weitzen and Dr. Lieber-Diaz both supported their opinion with a detailed narrative rationale which cites significant medical evidence and other evidence from the record. I also find that both of these opinions are consistent with the record as a whole, including the mental capacity evidenced by [plaintiff's] various activities, as discussed above, such as participation in Girl Scouts, working as a lifeguard, horseback riding, figure skating, taking a sewing class, and completing cosmetology training.

*Id*. at 557-58.

The Court concludes that, with both Dr. Weitzen and Dr. Leiber-Diaz's opinions, the ALJ's analysis fails to satisfy the supportability and consistency factors because the ALJ did not adequately discuss the evidence that each state agency consultant relied upon or compare each opinion to the other evidence of record. *See* 20 C.F.R. §§ 416.920c(c)(1)-(2); *see also Melissa W. v. Comm'r of Soc. Sec.*, No. 1:22-CV-891 (JGW), 2025 WL 1929917, at *9 (W.D.N.Y. July 14, 2025) (citing *Rosario v. Comm'r of Soc. Sec*,

20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022)) ("Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record.").

As to the supportability factor, it is unclear how the ALJ concluded that Dr. Weitzen and Dr. Lieber-Diaz supported their opinions with "significant medical evidence." Dkt. No. 8 at 66-67, 86-87. The only medical evidence supporting Dr. Weitzen's opinion is an October 18, 2020, pediatric medicine record stating, "No concerns noted. No psych meds prescribed (sic)," and a December 4, 2020, psychiatric examination report noting that plaintiff denied a history of inpatient psychiatric admissions, was not receiving outpatient care, and was not taking psychiatric medications. *Id*. at 66-67. Although Dr. Weitzen refers to February 2019 IQ test results, a May 2019 vocation report, and an ADL form submitted by plaintiff's mother, it does not appear that these are medical records. *See id*. Dr. Lieber-Diaz adopted Dr. Weitzen's opinion in full, stating that there was no new medical evidence at the reconsideration level. *See id*. at 86 ("No new MER at the RC level.").

The administrative transcript is over 1,000 pages, the overwhelming majority of which are medical records and medical opinions. *See generally* Dkt. No. 8. The state consultative examiners based their opinions on two unspecified medical records of unknown length, detail, and context. *See id*. at 66-67, 86. As the state consultative examiners did not specify which records they relied upon and did not provide any other identifying information of the records listed in their opinions such that the Court can locate them in the administrative transcript, and the ALJ's analysis failed to do the same, judicial

review of the supportability factor of Dr. Weitzen and Dr. Lieber-Diaz's opinions is frustrated. *See* 20 C.F.R. § 416.920c(c)(1); *Kathleen A*, 2022 WL 673824, at *4 (quoting *Carmen M.*, 2021 WL 5410550, at *4).

Similarly, the ALJ's determination that Dr. Weitzen and Dr. Lieber-Diaz's "opinions are consistent with the record as a whole," fails to satisfy the consistency factor analysis required by 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ failed to provide any meaningful analysis of the evidence of record in the context of the consistency prong when evaluating Dr. Weitzen and Dr. Lieber-Diaz's opinions. *See* 20 C.F.R. § 416.920c(c)(2); *Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G.*,2021 WL 5232722, at *4); *Melissa W.*, 2025 WL 1929917, at *9 (citing *Rosario*, 2022 WL 819810, at *8); *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 431 (S.D.N.Y. 2010) ("The ALJ also failed to explicitly discuss the consistency of the treating doctors' findings and their indications that plaintiff suffered from severe limitations."). The ALJ simply stated that Dr. Weitzen and Dr. Lieber-Diaz's opinions "are consistent with the record as a whole" without any reference to medical evidence of record or discussion thereof. *See* T. at 558.

Further, it is unclear how the ALJ concluded that Dr. Weitzen and Dr. Lieber-Diaz's opinions were consistent with plaintiff's "mental capacity evidenced by [her] various activities, as discussed above, such as participation in Girl Scouts, working as a lifeguard, horseback riding, figure skating, taking a sewing class, and completing cosmetology training." T. at 558. Dr. Weitzen noted that plaintiff's treatment records documented that she had difficulty (1) communicating, (2) completing job interviews, (3) following multiple directions and written instructions, (4) "interpreting written materials and understanding

complex sentences and subtleties," (5) counting money or making change, (6) "retaining learned information for more than six months," (6) "performing math calculations," and (7) "follow[ing] directions to nearby places." *Id*. at 66-67. Dr. Weitzen also noted that although plaintiff was able to perform ADLs such as personal care, prepare simple meals, and do light cleaning; she did not do laundry, shopping, or manage money. *See id*. Further Dr. Weitzen noted that plaintiff did not go out into the community on her own, did "not drive or use public transportation independently," relied on others "for chores at home," and needed reminders to care for pets and take her medication. *See id*.

The ALJ appears to have cherry-picked the evidence supporting this part of his analysis because he did not reconcile the favorable evidence Dr. Weitzen referenced as part of his medical opinion. *See Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-6183 (KAM), 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) (citations omitted) ("Reviewing courts decry administrative cherry-picking of relevant evidence. This term refers to crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source. Cherry-picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."); *Strange v. Comm'r of Soc. Sec.*, No. 6:13-CV-527 (GLS/ESH), 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) ("A classic case of cherry-picking evidence occurs when administrative law judges credit information consistent with their findings while ignoring or discrediting inconsistent information *from the same sources* without providing plausible reasons.").

In sum, the ALJ's supportability and consistency analysis of Dr. Weitzen and Dr. Lieber-Diaz's opinions frustrate meaningful review. *See Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-0020 (MAD/DJS), 2023 WL 2863323, at *5 (N.D.N.Y. Feb. 3, 2023),

*report and recommendation adopted,* No. 6:22-CV-0020 (MAD/DJS), 2023 WL 2583212 (N.D.N.Y. Mar. 21, 2023) (quoting *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020)) ("The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.") (internal quotation marks omitted).

2. **ADL**

Plaintiff also correctly argues that the ALJ improperly relied on her activities and ADL to reach his RFC determination. *See* Dkt. No. 9 at 17-18. The ALJ listed plaintiff's activities and ADL at length, before concluding that "[t]hese various activities are inconsistent with a finding of disability, and they support a conclusion that the claimant is capable of performing simple, routine work requiring limited social interaction." T. at 557.

Yet, the ALJ did not explain how plaintiff's activities and ADL support an ability to perform "perform a full range of work at all exertional levels" with the limitations listed above, or maintain regular employment. *See supra* 6 (quoting T. at 555). "[W]hile an ALJ may properly consider these activities when assessing the intensity and persistence of symptoms . . . the ALJ here appeared to place disproportionate weight on [P]laintiff's activities of daily living" because the ALJ failed to explain how many of these activities translate to the ability to obtain and maintain employment, i.e. going ice skating, working on art projects with the Girl Scouts, and participating in the community.[5] *Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-20 (MAD/DJS), 2023 WL 2863323, at *4 (N.D.N.Y. Feb. 3, 2023), *report and recommendation adopted,* No. 6:22-CV-20 (MAD/DJS), 2023

[5] The ALJ also fails to explain how plaintiff's desires to "obtain memberships for a zoo, a museum, and the YMCA," as well as her enjoyment of "traveling and seeing new places inside and outside New York State to obtain new experiences" are relevant to this analysis. T. at 557.

WL 2583212 (N.D.N.Y. Mar. 21, 2023) (first citing *Tenesha G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1070 (DNH), 2022 WL 35998, at *7 (N.D.N.Y. Jan. 4, 2022); then quoting *David F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-315 (SALM), 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (quoting *Berg v. Colvin*, No. 3:14-CV-1042 (SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016))) (internal citation and quotation marks omitted).

Additionally, the ALJ's analysis does not discuss the frequency or duration at which plaintiff performs any of these activities. *See Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2021 WL 4264814, at *6 (E.D.N.Y. Sept. 20, 2021) (quoting *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-3568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004))) ("[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.") (internal quotation marks omitted).

The Second Circuit has "stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988))); *Moss v. Colvin*, No. 1:13-CV-731 (GHW/MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("It is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (internal citation and quotation marks omitted). "There are

critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Id*. (quoting *David F.*, 2021 WL 5937670, at *9 (quoting *Moss*, 2014 WL 4631884, at *33)). "[A]n ALJ should take into account whether any evidence of daily activities shows that the claimant engage[d] in any of these activities for sustained periods comparable to those required to hold . . . a job." *Id*. (quoting *Kelly W. v. Kijakazi*, No. 3:20-CV-948 (JCH), 2021 WL 4237190, at *10 (D. Conn. Sept. 17, 2021) (quoting *Balsamo*, 142 F.3d at 81))).

Accordingly, the Court concludes that the ALJ did not adequately consider plaintiff's ADL. *See Alexandria S.*, 2023 WL 2863323, at *4; *Munoz*, 2021 WL 4264814, at *6.

The Court will not address plaintiff's remaining arguments, which the ALJ may consider on remand. *See Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments."); *Shields v. Astrue*, No. 11-CV-2088 (FB), 2012 WL 1865505, at *3 (E.D.N.Y. May 22, 2012) ("In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument."); *Mary S. v. Kijakazi*, No. 3:21-CV-1095 (RMS), 2022 WL 4074536, at *17 (D. Conn. Aug. 26, 2022) (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) ("[S]ince the 'case must return to the agency either way for the reasons already given . . . the Commissioner will have the opportunity on remand to obviate th[ese] dispute[s] altogether by' addressing the remaining arguments on remand."); *Annunziato v. Berryhill*, No. 3:17-

CV-606 (JAM), 2019 WL 156934, at *4 (D. Conn. Jan. 10, 2019) ("The ALJ shall also consider plaintiff's remaining arguments on remand.").

## V. **Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's decision is **REVERSED, and the matter REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Date: August 26, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge